Filed 11/30/22  P. v. Halstead CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077556 |
| v. | (Super. Ct. No. CR49567) |
| SHAWN HALSTEAD, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Reversed and remanded with directions.

Chambers Law and Dan E. Chambers, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Alan L. Amann and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

Defendant and appellant Shawn Halstead appeals from the trial court's denial of his petition for resentencing pursuant to Penal Code[1] former section 1170.95.[2] He contends the court erred in denying his petition finding him ineligible for relief as a matter of law based on the jury's special circumstances finding. While defendant's appeal was pending, our Supreme Court held that a pre-*Banks*/*Clark*[3] felony-murder special circumstance finding does not render a former section 1170.95 petitioner ineligible for relief as a matter of law. (*People v. Strong* (2022) 13 Cal.5th 698 (*Strong*).) Based on *Strong*, we must vacate the trial court's order and remand the matter for further proceedings.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND[4]

In 1993, when the robbery-murder was committed, defendant was 22 years old and a drug dealer. Defendant was friends with the victim, Edward Ahumada, who was 19 years old at the time. Defendant and Ahumada hung out and did drugs together. Defendant dealt drugs for Esteban Nerey, who had someone manufacturing methamphetamine for him and carried a gun.

After Ahumada indicated to defendant that he could help get methamphetamine for him, defendant gave Ahumada $1,500 to buy some methamphetamine. Ahumada

---

[1] All future references are to the Penal Code unless otherwise stated.

*[footnote continued on next page]*

took the money, but later told defendant that he had been robbed and as a result had no money or methamphetamine. Defendant told Ahumada to give his gun to Nerey for collateral so that Ahumada would have more time to figure out what happened to the money or drugs. Ahumada did not want to give up his gun. Later that night defendant contacted Nerey and told him, "let's get the gun from Eddie," and Nerey agreed. Defendant then contacted Ahumada and falsely told him that they could get some drugs, and arranged for Ahumada to pick him up and another friend (Rick Garcia). Defendant and Ahumada also met up with Nerey.

Thereafter, defendant and Ahumada, riding in Ahumada's car, followed Nerey and Garcia in Nerey's car as they drove up some hills. Once they stopped, Nerey directed Ahumada to drive further up the hill where Ahumada made a U-turn. Defendant told Ahumada to turn over his gun. Ahumada did not resist and complied. Defendant admitted that he had lied to Ahumada to get him to that location and that Ahumada had

---

[2] That section has since been renumbered as section 1172.6. (Stats. 2022, ch. 58, § 10.) However, because that change was nonsubstantive and the parties cite to former section 1170.95, we will cite to former section 1170.95 for ease of reference.

[3] *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*); *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

[4] A summary of the factual background is taken from defendant's statements at his parole hearing during which defendant described the robbery and murder under oath. (See *People v. Myles* (2021) 69 Cal.App.5th 688, 699-700 [parole risk assessment report and parole hearing transcript are admissible at hearing on petition for resentencing under former section 1170.95].) The transcript of the parole hearing is found in the clerk's transcript of this appeal.

3

joined him because he trusted defendant. Defendant explained that Ahumada would not have gone with him (defendant) if he had known Nerey was coming.

At some point after they stopped, Nerey climbed into the back seat of Ahumada's car, behind Ahumada as he sat in the driver's seat. As defendant exited Ahumada's vehicle, Nerey shot Ahumada in the back of the head with a shotgun. Nerey shot Ahumada a second time, and defendant ran to and got into Nerey's car. Defendant was unsure whether Ahumada was dead, but pesumed so. When Nerey returned to his car, defendant handed him Ahumada's gun. Nerey drove away with defendant and Garcia, leaving Ahumada behind. Defendant denied being aware that Nerey was going to shoot Ahumada, albeit he knew that Nerey carried a shotgun and that they were going to get Ahumada's gun.[5]

The next day, defendant called Ahumada's house to find out what had happened to Ahumada because he was worried and felt guilty. Ahumada's brother answered the phone and told defendant that detectives wanted to speak with him. Detectives then picked defendant up from his home and informed him that Ahumada was dead. After defendant told the detectives what had happened, defendant was arrested.

In October 1994, a jury found defendant guilty of first degree murder (§ 187, subd. (a)). The jury also found true the special circumstance allegation that the murder occurred during the commission of a robbery (§ 190.2, subd. (a)(17)(i)). The trial court

---

[5] Defendant admitted to the parole board that, when he reflected on that night, he had "lured him (Ahumada) to his death."

4

sentenced defendant to life in prison without the possibility of parole. In 2018, the Governor commuted defendant's sentence to 25 years to life. The parole board subsequently conducted a hearing and granted defendant parole.

On August 8, 2020, defendant filed a petition for resentencing pursuant to former section 1170.95, requesting that his murder conviction be vacated based on changes to sections 188 and 189 as amended by Senate Bill No. 1437. The trial court thereafter appointed counsel for defendant.

Following briefing by both parties and supplemental briefing on the effect of the commutation, a hearing on the petition was held on June 18, 2021. The court denied the petition and declined to issue an order to show cause. The court found that defendant was ineligible for resentencing as a matter of law given the jury's special circumstance finding. Defendant timely appealed.

III.

DISCUSSION

Defendant contends the jury's special circumstance finding did not render him ineligible for relief as a matter of law because his conviction predates our Supreme Court's decisions in *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522, which clarified the meaning of "major participant" and "reckless indifference to human life." He thus believes he has established a prima facie case for relief under former section 1170.95 requiring the court to issue an order to show cause and hold an evidentiary hearing.

5

A. *Legal Background*

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 "'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Gentile* (2020) 10 Cal.5th 830, 846-847 (*Gentile*); see Stats. 2018, ch. 1015, § 1, subd. (f).) The Legislature accomplished this by amending sections 188 and 189 and adding former section 1170.95 to the Penal Code. Senate Bill No. 775 expanded the scope of those changes to encompass, among other things, murder convictions "under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime." (Former § 1170.95, subd. (a), as amended by Stats. 2021, ch. 551, § 2.)

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of [s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2.) Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the

actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2." (Stats. 2018, ch. 1015, § 3.)

Senate Bill No. 1437 also "added [former] section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief." (*Gentile*, *supra*, 10 Cal.5th at p. 843; see *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)  Pursuant to former section 1170.95, an offender must file a petition in the sentencing court declaring that:  "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;]  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted of first degree or second degree murder [;]  [¶]  [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (Former § 1170.95, subds. (a)(1)-(3); see also former § 1170.95 subd. (b)(1)(A).)

On January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) became effective. (Stats. 2021, ch. 551.)  In Senate Bill No. 775, the Legislature amended the language of former section 1170.95, expanding the scope of the petitioning process and clarifying

7

some of the procedural requirements.  (Stats. 2021, ch. 551, § 2.)  Former section 1170.95 now provides that, upon receiving a petition, if the petitioner has requested counsel, the court must appoint counsel to represent the petitioner.  (Former § 1170.95, subd. (b)(3).)  "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief."  (Former § 1170.95, subd. (c).)  If the petitioner has made such a showing that the petitioner is entitled to relief, the court "shall issue an order to show cause."  (Former § 1170.95, subd. (c).)  "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so."  (Former § 1170.95, subd. (c).)

The prima facie inquiry under section former 1170.95 subdivision (c) is "limited."  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  The court "'"takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved."'"  (*Ibid*.)  Although the court may rely on the record of conviction (including a prior appellate court opinion) in determining whether defendant has made a prima facie showing, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'"  (*Id*. at p. 972; see *id*. at p. 971.)

Within 60 days after the order to show cause has issued, the trial court must then hold a hearing "to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any

8

remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (Former § 1170.95, subd. (d)(1).) If a hearing is held, "'[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.'" (Former § 1170.95, subd. (d)(3); see *Gentile*, *supra*, 10 Cal.5th at p. 853.) "At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' ([Former] § 1170.95, subd. (d)(3).)" (*Lewis*, *supra*, 11 Cal.5th at p. 960.)

B. *Standard of Review*

In this case, the trial court denied defendant's petition at the prima facie stage under former section 1170.95, subdivision (c). A denial at this stage is appropriate only if the record of conviction demonstrates that the petitioner is ineligible for relief as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 960.) This is a purely legal conclusion, which we review de novo. (See *Id*. at p. 961.) The interpretation and application of a statute to factual findings is a question of law subject to de novo review as well. (*Ibid*.; *People v. Johnson* (2016) 1 Cal.App.5th 953, 960.)

C. *Analysis*

Defendant contends that the trial court erred in determining he did not fall within the provisions of former section 1170.95 given the jury's robbery-murder special circumstance finding.

9

Our Supreme Court recently made clear that when, as here, a defendant's case "was tried before both *Banks* and *Clark*, the special circumstance findings do not preclude him from making out a prima facie case for resentencing under section 1172.6 [(former section 1170.95)]." (*Strong*, *supra*, 13 Cal.5th at p. 721.) "This is true even if the trial evidence would have been sufficient to support the findings under *Banks* and *Clark*." (*Id*. at p. 710.) The *Strong* court noted that the *Banks* and *Clark* cases "both substantially clarified the law governing findings under . . . section 190.2, subdivision (d)." (*Id*. at p. 706.) The court explained that a pre-*Banks* and *Clark* special circumstance finding does not negate the showing that the petitioner could not presently be convicted of murder or attempted murder because of changes to section 188 or 189 "because the finding alone does not establish that the petitioner is in a class of defendants who would still be viewed as liable for murder under the current understanding of the major participant and reckless indifference requirements." (*Id*. at pp. 717-718.)

Noting the differences between pre- and post-*Banks* and *Clark* special circumstance requirements, the Supreme Court observed the changes may "have altered what evidence defense counsel would have sought to introduce . . . might have fundamentally altered trial strategies," and may have affected what jury instructions were requested or given. (*Strong*, *supra*, 13 Cal. 5th at p. 719.) "An after-the-fact court review of a pre-*Banks* and *Clark* record does not account for all these differences. . . . And as the Legislature has made explicit in a recent amendment to the predecessor to section 1172.6 [(former section 1170.95)], a court determination that substantial evidence

10

supports a homicide conviction is not a basis for denying resentencing after an evidentiary hearing. [Citation.] Nor, then, is it a basis for denying a petitioner the opportunity to have an evidentiary hearing in the first place." (*Id*. at p. 720.) Thus, neither "the jury's pre-*Banks* and *Clark* findings nor a court's later sufficiency of the evidence review amounts to the determination section 1172.6 [(former section 1170.95)] requires, and neither set of findings supplies a basis to reject an otherwise adequate prima facie showing and deny issuance of an order to show cause." (*Strong*, *supra*, at p. 720.)

Here, the jury made its special circumstances finding approximately 22 years before *Banks* and *Clark*. Pursuant to *Strong*, that finding does not preclude defendant from stating a prima facie case for relief. (*Strong*, *supra*, 13 Cal.5th at p. 721.) And, regardless of the trial court's evaluation of the trial evidence, *Strong* makes clear that a defendant's prima facie case is not barred even if the trial evidence was sufficient to support the special circumstance finding after *Banks* and *Clark*. (*Id*. at p. 710; *Lewis*, *supra*, 11 Cal.5th at p. 972 [in reviewing the record at the prima facie stage, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion'"].)

Defendant's resentencing petition was facially sufficient and alleged the essential facts necessary for relief under former section 1170.95. Nothing in the record demonstrates defendant is ineligible for relief as a matter of law, so we must remand the matter for the trial court to issue an order to show cause and, to the extent necessary,

11

conduct an evidentiary hearing.[6] (Former § 1170.95, subd. (d).) We express no opinion on the ultimate resolution of the petition.

## IV.

## DISPOSITION

The trial court's order denying defendant's former section 1170.95 petition is reversed. On remand, the court is directed to issue an order to show cause and, to the extent necessary, hold an evidentiary hearing on the petition.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

FIELDS
J.

RAPHAEL
J.

---

[6] Because we find remand is necessary under *Strong*, we need not decide defendant's remaining contention that the Governor's commutation of his sentence from life without the possibility of parole to the possibility of parole effectively nullified the special circumstance finding by operation of law.

12